UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| **KUKDO CHEMICAL CO., LTD.,** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Court No:  25-00146 |
| **UNITED STATES,** | ) ) ) | |
| Defendant. | ) ) ) | |

**COMPLAINT**

Kukdo Chemical Co., Ltd. ("Plaintiff" or "Kukdo Chemical"), by and through its counsel, hereby alleges and states as follows:

**JURISDICTION**

1.  Plaintiff brings this action pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II) and (a)(2)(B)(i) to contest certain aspects of Commerce's final determination and resulting countervailing duty order in the countervailing duty investigation on Certain Epoxy Resins from the Republic of Korea, Case No. C-580-920, issued on April 3, 2025 by the International Trade Administration of the U.S. Department of Commerce ("Commerce").  *See Certain Epoxy Resins From the Republic of Korea: Final Affirmative Countervailing Duty Determination and Final Negative Critical Circumstances Determination*, 90 Fed. Reg. 14,605 (Dept. Comm., Apr. 3, 2025) ("Final Determination") and accompanying Issues and Decision Memorandum for the Final Affirmative Determination of the Countervailing Duty Investigation of Certain Epoxy Resins from the Republic of Korea, dated March 28, 2025 ("Final I&D Memo"); *Certain Epoxy Resins From Taiwan: Amended Final Countervailing Duty Determination; Certain Epoxy Resins*

*From the Republic of Korea and Taiwan: Countervailing Duty Orders*, 90 Fed. Reg. 22,235 (Dept. Comm., May 27, 2025) ("Countervailing Duty Order").

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) because this appeal is taken pursuant to 19 U.S.C. § 1516a.

## STANDING

3. Kukdo Chemical participated as a mandatory respondent in the proceeding before Commerce that resulted in the contested Final Determination. Kukdo Chemical is a Korean producer and exporter of the subject epoxy resins. Therefore, Kukdo Chemical is an interested party within the meaning of 19 U.S.C. § 1677(9)(A). Accordingly, Plaintiff Kukdo Chemical has standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

4. On May 27, 2025, Commerce published in the Federal Register its Countervailing Duty Order. *See Countervailing Duty Order*, 90 Fed. Reg. 22,235 (Dep't Comm., May 27, 2025).

5. On June 26, 2025, Plaintiff timely filed a Summons to commence this action within 30 days of the publication of the Order in accordance with 19 U.S.C. § 1516a(a)(2)(A)(i)(II). *See* Summons, ECF No. 1.

6. Plaintiff is timely filing this Complaint in accordance with 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rules 3(a)(2) and 6(a) of the Rules of this Court, as this complaint is being filed within 30 days of the filing of the June 26, 2025, Summons.

**STATEMENT OF FACTS**

7.     On April 29, 2024, Commerce initiated a countervailing duty investigation on Certain Epoxy Resins from the Republic of Korea. *See Certain Epoxy Resins From the People's Republic of China, India, the Republic of Korea, and Taiwan: Initiation of Countervailing Duty Investigations*, 89 Fed. Reg. 33,319 (Dep't Comm., Apr. 29, 2024) ("*Initiation Notice*"). Commerce initiated its investigation based on a petition filed by the U.S. Epoxy Resin Producers *Ad Hoc* Coalition ("Petitioner"). Commerce's period of investigation ("POI") was January 1, 2023, through December 31, 2023. On May 9, 2024, Commerce selected Kukdo Chemical and Kumho P & B Chemicals Inc. ("Kumho") as the mandatory respondents. *See* Department Memorandum "Countervailing Duty Investigation of Epoxy Resins from the Republic of Korea: Respondent Selection" (May 9, 2024).

8.     On May 10, 2024, Commerce issued a countervailing duty questionnaire to Kukdo Chemical. Kukdo Chemical responded to Commerce's initial questionnaire and subsequent supplemental questionnaires, and cooperated fully with the investigation. On August 7, 2024, Petitioner filed new subsidy allegations, alleging that the mandatory respondents received so-called "transnational subsidies" from the government of the People's Republic of China ("PRC"). Commerce issued a supplemental questionnaire to Petitioner regarding the new subsidy allegations, and, on September 3, 2024, Petitioner responded to the supplemental questionnaire.

9.     On September 13, 2024, Commerce published its negative preliminary determination in the investigation, calculating a *de minimis* preliminary *ad valorem* subsidy rate of 0.74 percent for Kukdo Chemical. *See Certain Epoxy Resins From the Republic of Korea:*

3

*Preliminary Negative Countervailing Duty Determination, Preliminary Negative Critical Circumstances Determination and Alignment of Final Determination With Final Antidumping Duty Determination*, 89 Fed. Reg. 74,912 (Dep't Comm., Sept. 13, 2024) and accompanying Issues and Decision Memorandum ("Prelim. I&D Memo").  Regarding Petitioner's August 7, 2024, new subsidy allegations, Commerce stated it intended to issue a post-preliminary determination whether to initiate an investigation of the programs alleged in Petitioner's new subsidy allegations.  *See* Prelim. I&D Memo at 4.

10. In the Preliminary Determination, among its program-specific preliminary subsidy findings, Commerce determined that Kukdo Chemical, and its cross-owned affiliate, Kukdo Finechem Co., Ltd. ("Kukdo Finechem") received countervailable subsidies pursuant to the Chemical Substance Registration Support Project ("CSRSP") program.  *See* Prelim. I&D Memo at 35.  Commerce preliminarily concluded that the program conferred a financial contribution from the Government of Korea to the mandatory respondents in the form of a direct transfer of funds that is *de jure* specific, and this financial contribution constituted a countervailable benefit.  *Id*.

11. Commerce's analysis of the countervailability of the CSRSP program was of a first impression in Commerce's countervailing duty investigations involving Korea.  The Government of Korea mandates the registration of chemical substances for any person who intends to manufacture or import more than one ton of the substances per year, and this program essentially operates to have the Korean Government contribute to the payment of certain testing and analysis to support the registration of the chemical.  *See* Kukdo Chemical's Initial Countervailing Duty Questionnaire Response (July 3, 2024) at Exhibit OTH-13-A, at 1.  Under this program, the companies that intend to import or manufacture the chemical form a

4

"consultative body" ("CB") to facilitate the registration of the chemical. *Id.* at 2-3. A private, non-profit entity that administers the CSRSP program paid private consulting companies for services performed on behalf of CBs under this program. *Id.*

12. Commerce preliminarily found that the CSRSP program provided a financial contribution in the form of a grant. *See* Prelim. I&D Memo at 34-35. Commerce determined the amount of the grant to be the amount paid to the private consulting companies for services performed on behalf of the CBs. *Id.* at 35. To calculate the countervailable benefit, Commerce divided the total amount received by all CBs in which Kukdo Chemical and/or Kukdo Finechem was a member company, by Kukdo Chemical's and Kukdo Finechem's respective total sales during the POI. *Id.*

13. On November 12, 2024, Commerce initiated an investigation of two new subsidy allegations from Petitioner's August 7, 2024, new subsidy allegations: (1) The provisions of Epichlorohydrin ("ECH") and Bisphenol A ("BPA") for less than adequate remuneration ("LTAR") from the PRC; and (2) the alleged subsidies from the parallel countervailing duty investigation on *Epoxy Resins from the People's Republic of China* conferred upon international consortia. *See* Memorandum re: Countervailing Duty Investigation of Certain Epoxy Resins from the Republic of Korea: *Initiation of Investigation of Additional New Subsidy Programs* (Nov. 12, 2024). Commerce issued additional new subsidy allegation questionnaires ("NSA Questionnaire") to the Government of Korea, the PRC, Kukdo Chemical, and Kumho. The PRC did not respond to Commerce's NSA Questionnaire. Kukdo Chemical, as well as the Government of Korea and Kumho, responded fully to Commerce's NSA Questionnaires.

14.     Commerce conducted verifications of the Government of Korea, Kumho, and Kukdo Chemical from January 6, 2025, through January 15, 2025.  On February 10, Commerce issued the verification report for the Government of Korea, and on February 11 and 12, Commerce issued the verification reports for Kumho and Kukdo, respectively.

15.     On February 13, 2025, Commerce issued a memorandum establishing the briefing schedule limited to the issues discussed in its Preliminary Determination, *i.e.,* issues other than the scope of the investigation and Commerce's initiation of November 12, 2024, new subsidy allegations.  Between February 24, 2025 and March 5, 2025, Petitioner, the Government of Korea, Kukdo Chemical, and Kumho submitted their case and rebuttal briefs.

16.     On March 11, 2025, Commerce issued its post-preliminary issues and decision memorandum ("Post-Prelim. I&D Memo") concerning the new subsidy investigation.  Commerce preliminarily found that the provision of ECH for LTAR from the PRC constitutes a countervailable transnational subsidy.  Citing to the fact that the PRC did not respond to Commerce's NSA Questionnaire, Commerce relied on facts available to determine that Kukdo Chemical's purchases of ECH from China are from the PRC authorities whose sales of ECH constituted a financial contribution, and that the transnational provision of ECH for LTAR was *de facto* specific to Korean epoxy resins producers.  *See* Post-Prelim. I&D Memo at 6-8.

17.     As to the countervailable benefit, Commerce established a benchmark for the value of ECH purchases using Kukdo Chemical's input purchase template.  Specifically, Commerce compared the prices that Kukdo Chemical paid to non-Chinese unaffiliated ECH suppliers with the price that Kukdo Chemical paid for ECH input from Chinese suppliers.  *See* Post-Prelim. I&D Memo  at 9-11.  Commerce adjusted the benchmark price to derive the

6

"delivered price" by including delivery charges and import duties, as applicable. *Id.* When calculating delivered price for imports of Chinese-origin ECH, Commerce applied facts available with adverse inferences to Kukdo Chemical's per-unit delivery charges for freight from port-to-destination within Korea. *Id.* at 6-7. Commerce stated that it applied averse facts available because Commerce "discovered" that Kukdo Chemical's reported monthly ECH inland freight was incomplete. *Id.* at 6. In addition, as facts available, commerce also added a value-added tax ("VAT") of 10 percent of the material cost of ECH for all imports reported in Kukdo Chemical's input purchase table. *Id.* at 10.

18. Commerce preliminarily found the transnational provision of ECH for LTAR benefit amount to be non-measurable. Thus, the preliminary, *de minimis* subsidy rate of 0.74 percent remained unchanged for Kukdo Chemical.

19. On March 12, 2025, Commerce issued a separate briefing schedule for issues related to the new subsidy allegations. Between March 17, 2025 and March 24, 2025, Petitioner, the Government of Korea, Kukdo Chemical, and Kumho submitted case and rebuttal briefs.

20. On April 3, 2025, Commerce issued its Final Determination in the investigation. *See Certain Epoxy Resins From the Republic of Korea: Final Affirmative Countervailing Duty Determination and Final Negative Critical Circumstances Determination*, 90 Fed. Reg. 14,605 (April 3, 2025), and accompanying Final I&D Memo.

21. In the Final Determination, Commerce revised its calculations for Kukdo Chemical's purchases of electricity for LTAR from the Korea Electric Power Corporation ("KEPCO"). Commerce stated that it adjusted the electricity cost benchmark to include KEPCO's fuel cost shortfall that the company incurred during the POI, although in its

7

calculations Commerce simply added the cost shortfall on Kukdo Chemical's reported electricity purchases. *See* Final I&D Memo at Cmt 3.

22. In addition, Commerce continued to apply adverse facts available to Kukdo's freight expenses for the transnational provision of ECH for LTAR. *See* Final I&D Memo at Cmt 19. With respect to VAT payments on purchases of ECH, unlike in the Post-Preliminary Determination, where Commerce included the VAT amounts on facts available only for imported ECH purchases, in the Final Determination Commerce also included the VAT amount for domestic purchases of ECH based on adverse facts available for its benefit analysis under the transnational provision of ECH for LTAR. As a result, in the Final Determination, Commerce calculated a measurable benefit of 0.06 percent *ad valorem* subsidy rate for this program.

23. With respect to the CSRSP program, Commerce continued to find that the program conferred a countervailable benefit and disagreed with Kukdo Chemical's argument that Commerce double-counted the benefit by attributing the full grant amount to the CBs to both Kukdo Chemical and Kukdo Finechem where both companies participated (along with other companies) in the same CB, as well as in an instance where both mandatory respondents, Kukdo Chemical and Kumho participated in the same CB. *See* Final I&D Memo at Cmt 9.

24. On April 7, 2025, Kukdo Chemical alleged ministerial errors with respect to Commerce's benefit calculations for the CSRSP program and the provision of electricity for LTAR. Petitioner claimed that Commerce's application of adverse facts available with respect to Kukdo's VAT reporting constituted a ministerial error. On April 29, 2025, Commerce disagreed with all of these arguments stating that the allegations did not constitute ministerial errors, and made no changes to the Final Determination.

25. On May 27, 2025, Commerce published the Countervailing Duty Order. *See Certain Epoxy Resins From Taiwan: Amended Final Countervailing Duty Determination; Certain Epoxy Resins From the Republic of Korea and Taiwan: Countervailing Duty Orders*, 90 Fed. Reg. 22,235 (Dept. Comm., May 27, 2025). After the publication of the Final Determination in the Federal Register, on June 26, 2025, Kukdo Chemical timely filed this appeal to this Court. *See* Summons, ECF No. 1.

## STATEMENT OF CLAIMS

26. The Final Determination and the resulting Countervailing Duty Order are unsupported by substantial record evidence and otherwise not in accordance with law in the following respects:

### COUNT I:  Commerce's CSRSP Program Benefit Calculation

27. Paragraphs 1 through 26 of this Complaint are incorporated herein by reference.

28. Commerce's determination that payments made on behalf of a CB through the CSRSP program constituted a benefit received by and for each individual participant of the CB is unsupported by substantial record evidence and is contrary to law. Commerce essentially treated a one-time payment made to a group of participants to a CB, as if each participant individually received the full payment. This resulted in an overstatement of the benefit allegedly received by Kukdo Chemical and Kukdo Finechem. Commerce's benefit calculations amount to double-counting of any countervailable benefit between Kukdo Chemical and Kukdo Finechem, and between Kukdo Chemical and another mandatory respondent, Kumho, which is unsupported by substantial record evidence and contrary to law.

### COUNT II: Substantive Errors in the Transnational Provision of ECH for LTAR Determination

29. Paragraphs 1 through 28 of this Complaint are incorporated herein by reference.

30. Commerce's determination of the countervailability of the transnational provision of ECH for LTAR was unsupported by substantial record evidence and contrary to law. In this regard, Kukdo Chemical challenges certain aspects of Commerce's countervailability determination, including any and all substantive aspects of Commerce's subsidy analysis, including its decision that it could investigate subsidies allegedly provided by a third-country government, and its financial contribution and specificity findings.

31. Specifically, Commerce's reliance on facts available to find that Kukdo Chemical's purchases of ECH constituted a financial contribution is not supported by substantial record evidence and contrary to law. Commerce's finding that the transnational provision of ECH for LTAR is *de facto* specific to Korean epoxy resin industry is not supported by substantial record evidence and contrary to law. Commerce's conclusion that it could investigate subsidies allegedly conferred by the Government of China was also contrary to law.

### COUNT III: Application of Adverse Facts Available

32. Paragraphs 1 through 31 of this Complaint are incorporated herein by reference.

33. Commerce's application of adverse facts available for calculating the benchmark price for Kukdo's ECH inland freight expenses, which included adding VAT to all purchases of ECH on an adverse facts available basis, was unsupported by substantial evidence and contrary to law.

**COUNT IV:  Calculation of Benefits for the Provision of Electricity for LTAR**

34. Paragraphs 1 through 33 of this Complaint are incorporated herein by reference.

35. Commerce's determination that Kukdo Chemical purchased electricity and fuel for LTAR, that the Korean Government's provision of electricity and fuel through the Korea Electric Power Corporation was specific, and Commerce's computation of the subsidy rate, were unsupported by substantial evidence and otherwise contrary to law.

## **REQUEST FOR RELIEF**

For the foregoing reasons, Kukdo Chemical respectfully requests that this Court hold the foregoing aspects of Commerce's Final Determination unsupported by substantial record evidence and otherwise not in accordance with law. Therefore, Kukdo Chemical respectfully requests that this Court remand the Final Determination to Commerce to correct the errors set forth in this complaint and provide other such relief as this court deems appropriate.

        Respectfully submitted,

        /s/ J. David Park
        J. David Park
        Henry D. Almond
        Kang Woo Lee
        Archana Rao Vasa

        *Counsel to Kukdo Chemical Co., Ltd.*
        *Plaintiff*

        Eric Johnson

        *Consultant to Kukdo Chemical Co., Ltd.*

        ARNOLD & PORTER KAYE SCHOLER LLP
        601 MASSACHUSETTS AVENUE, N.W.
        WASHINGTON, D.C. 20001
        PHONE: (202) 942-5646
        FAX: (202) 942-5999

**Dated:  July 28, 2025**